**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DELPHI CORPORATION,

      Plaintiff,

v.                                        Case No. 08-CV-11048

AUTOMOTIVE TECHNOLOGIES
INTERNATIONAL, INC.,

      Defendant.
                                            /

**OPINION AND ORDER DENYING "ATI'S MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER OR STAY"**

Pending before the court is Defendant Automotive Technologies, Inc.'s ("ATI's) "Motion to Dismiss or in the Alternative to Transfer or Stay." The matter is fully briefed and the court concludes that a hearing is not necessary. See E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

**I. BACKGROUND**

Plaintiff Delphi Corporation filed this action in the Eastern District of Michigan on March 11, 2008, seeking a declaratory judgment stating that its Passive Occupant Detection System ("PODS") automobile safety products do not infringe upon any of ATI's four patents, which are labelled the '945, '100, 824 and '516 parents. (Compl. at ¶¶ 2, 4.) More specifically, Delphi seeks a declaratory judgment that would (1) cover Delphi's "manufacture, use, sale, offer for sale, and/or importation of its PODS products" against any valid claims of those patents, (2) declare the claims of those patents invalid

or (3) declare the claims of those patents unenforceable due to inequitable conduct. (*Id.* at ¶ 4.)

One month before Delphi filed suit in this court, ATI filed a complaint on February 11, 2008 in the Eastern District of Texas, asserting claims involving the same four patents against General Motors, Nissan, Ford, Volvo, Hyundai, Mercedes-Benz and Fuji ("Texas case"). (*Id.* at ¶¶ 15, 17-19.) Delphi is not a defendant in the Texas case, though it previously and currently manufactures and supplies PODS products to the seven defendants in the Texas case. (*Id.* at ¶¶ 16, 20.) ATI's motion seeks dismissal of the Michigan case under the first-to-file rule or, in the alternative, transfer or stay of the Michigan case.

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows for motions asserting lack of jurisdiction of the subject matter. Fed. R. Civ. P. 12(b)(1). Where a Rule 12(b)(1) motion contains a factual attack, the court need not construe the allegations in the non-moving party's favor, because the burden of proving jurisdiction is on the party asserting it. Moreover, it is recognized that a party faced with a Rule 12(b)(1) motion to dismiss may not rest on the truth of the facts asserted in its pleadings. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) ("[W]hen a court reviews a complaint under a factual attack [on jurisdiction], . . . no presumptive truthfulness applies to the factual allegations."); *Exchange Nat'l Bank of Chicago v. Touch Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976) ("[A] party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist.").

## III.  DISCUSSION

ATI filed its motion to dismiss on April 2, 2008, arguing that there is no case or controversy permitting this court to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). (ATI's Mot. at 2.) Specifically, ATI contends that there is no actual controversy because it is not suing Delphi anywhere and because Delphi "is in bankruptcy and therefore protected not only from an offensive infringement lawsuit by ATI, but also from the infringement counter-claims that ATI would file as a matter of course against a declaratory judgment plaintiff but for the Delphi Bankruptcy." (*Id.* at 3-4.) In the alternative, ATI argues that the pertinent convenience factors support its request to transfer this case to the Eastern District of Texas or to stay the matter pending the outcome of the Texas litigation. (*Id.* at 8-18.)

Delphi counters that the court has an actual controversy before it because, whatever the applicable bankruptcy protections are, ATI's suit in Texas calls into question the Delphi PODS products at issue there. (Delphi's Resp. at 5-6.) As such, Delphi is uncertain of its legal rights and dismissal would force it into the untenable position of choosing between discontinuing its current PODS business activity or risking further infringing activity. (*Id.* at 6-7.) Delphi further argues that ATI's claims are post-bankruptcy petitions claims and therefore not subject to the automatic stay of pre-petition claims against Delphi. (*Id.* at 7-8.) Delphi also presents the so-called customer-suit exception to the first to file rule and argues that its action is "dominant" and should therefore not be dismissed or stayed. (*Id.* at 8-10.) With respect to transfer, Delphi

argues that the convenience factors weigh in its favor and that Michigan is the more logical venue for this dispute.[1]

### A. ATI's Motion to Dismiss

### 1. Actual Controversy

According to the Declaratory Judgment Act:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Act "gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments." *Adrian Energy Assocs. v. Michigan Public Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007). Elsewhere, the Supreme Court described the discretion of the district court as "substantial." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). An actual controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 771 (2007) (quotations omitted).

The court is not persuaded by ATI's argument that the mere fact of Delphi's bankruptcy means that there is no actual controversy before the court. The Texas litigation plainly alleges that Delphi components used by certain automotive

---

[1]The defendants in the Texas case have filed a motion to transfer that case to this court. (Delphi's Resp. at 10.) As of the hour that this Order was docketed, that motion remained pending.

manufacturers infringe upon four ATI patents. In turn, the Michigan litigation challenges whether Delphi is also infringing on the same four patents, which would immediately impact its business practices and, ultimately, financial bottom line. Whatever the current bankruptcy condition of ATI and the attendant recoverability of any potential money judgment, the issue of infringement is a live and concrete dispute before this court.

The parties dispute whether the automatic stay provisions of applicable bankruptcy law preclude ATI from suing Delphi for patent infringement.[2] The core question is whether pre or post-bankruptcy petition claims are at issue here. (Delphi filed for bankruptcy protection on October 8, 2005.)

The Sixth Circuit cogently explained applicable bankruptcy law in *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 382 -383 (6th Cir. 2001). According to the court:

> Filing a petition under the Bankruptcy Code, *see* 11 U.S.C. §§ 301, 302, 303, creates an estate consisting of all –subject to certain exemptions for individual debtors, *see* 11 U.S.C. § 522– of the debtor's property, broadly defined, *see* 11 U.S.C. § 541, at the moment of the filing and certain other property recaptured by the estate during the bankruptcy proceeding, *see, e.g.,* 11 U.S.C. §§ 547 (preferences), 548 (fraudulent transfers). This property becomes the "pot" from which all claims against the debtor, *see* 11 U.S.C. §§ 101(5), 502, will be paid pursuant to the Code's priority scheme, *see* 11 U.S.C. § 507. Commencement of a suit automatically imposes a broad stay of other proceedings against the debtor and its property. *See* 11 U.S.C. § 362(a). "The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment. The stay of pre-petition proceedings enables the bankruptcy court to decide whether it will exercise its power under §

---

[2]Neither party has cited case law analyzing the interplay of the applicable bankruptcy and intellectual property law principles, and the court found no case with similar factual and procedural background.

502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so . . . ." *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1069 (5th Cir. 1986) (footnotes omitted). The stay helps "preserve what remains of the debtor's insolvent estate and . . . provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' " *Holtkamp v. Littlefield,* 669 F.2d 505, 508 (7th Cir. 1982).

Companies or individuals attempting to reorganize their affairs under Chapter 11 continue to conduct business during the pendency of the proceedings, with the bankruptcy case designed to give the debtor a second chance by permitting discharge of certain pre-petition debts, payment (over time and under court supervision) of certain pre-petition creditors, and use by the debtor of proceeds from ongoing operations to finance continuing operations and get the debtor back on its feet. A Chapter 11 debtor in possession remains obligated to pay most liabilities arising after commencement of the bankruptcy proceeding: post-petition debts are generally treated as administrative expenses to which the automatic stay provision does not apply. *See* 11 U.S.C. §§ 362(a)(1); 503(b); *In re Hemingway Transp., Inc.,* 954 F.2d 1 (1st Cir. 1992) (holding that the term administrative expenses for "preservation of the estate," includes protection of assets of the estate as well as post-petition operation of the debtor's business).

*Id.* at 382-83 (footnote omitted).

Based upon the record before the court, it is fair to conclude that at least part of Delphi's declaratory action raises post-petition activity that, properly understood, is ongoing.[3] Implicit in Delphi's argument regarding uncertainty is the assertion that Delphi must decide how to conduct its current, post-petition business activities. One of the four patents at issue - the '945 patent - is dated July 17, 2007, well after the 2005 bankruptcy petition of Delphi. While ATI has made no direct threat to Delphi of patent litigation, ATI has sued several of Delphi's customers and predicated that suit upon the

---

[3]The Texas complaint can be similarly understood.

6

alleged manufacture, sale or use of Delphi's PODS products. (*See* Texas Compl. at ¶¶ 14-20, ATI's Ex. A.) Under the circumstances, Delphi has a reasonable apprehension that its PODS products are subject to infringement claims "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S. Ct. at 771.

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), is instructive. The court held that a statement by a competitor of no plan to sue fails to eliminate justiciability where the "competitor engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [the] statement." *Id.* at 1382-83. ATI's Texas complaint, while not aimed directly at Delphi, evinces a similar preparedness and willingness to enforce its patent rights. The complaint explicitly references Delphi products and targets multiple, massive domestic and foreign customers of Delphi. Their market share of Delphi's PODS products, while not a matter of record, is likely large. Delphi, as the primary designer, developer and manufacturer of those products, bears a direct responsibility for and relationship to the challenge ATI lodged in Texas. As a practical matter, the Texas case inherently questions the validity of Delphi's ongoing PODS-related business activity and, relatedly, the value of those products.

Accordingly, the intellectual property rights of Delphi and ATI are real, manifest and clearly implicated in this case. The heart of this case is not hypothetical, and the court's exercise of jurisdiction over the matter would serve the purposes of the Declaratory Judgment Act. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008); *see also Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d

7

953, 956 (Fed. Cir. 1987) ("The purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."). The controversy is justiciable in spite of the bankruptcy and the court will reject the bankruptcy as a basis for dismissal for lack of actual controversy.

## 2. First-to-File Rule and the Customer-Suit Exception

ATI next argues that the first-to-file rule requires dismissal or stay of the Michigan litigation. Delphi counters that the customer-suit exception applies and that the first-to-file rule is therefore inapplicable. The first-to-file rule is a rule of comity that states, where actions are filed in separate federal district courts with nearly identical parties and issues, the court in which the first suit was filed should typically proceed to judgment. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001); *In re Amer. Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996). Courts may dispense with the rule for equitable reasons or when special circumstances are present, including bad faith, anticipatory suits, forum shopping or significant policy considerations. *Nartron Corp. v. Quantum Research Group, Ltd.*, 473 F. Supp. 2d 790, 795 (E.D. Mich. 2007).

More specifically, the customer-suit exception gives later-filed manufacturer declaratory suits priority over earlier-filed infringement suits against the manufacturer's customers. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). "At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit." *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977). "[I]t is a simple

8

fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, in order to avoid the damaging impact of an adverse ruling against its products." *Id.* at 738. As a corollary, an automotive customer that did not have final responsibility for designing, developing or manufacturing a component of its production would have less incentive to vigorously defend it against patent suits, particularly if the component is interchangeable and could be replaced with a competitor's product that is not entangled in a patent dispute. Declarations from employees of General Motors and Nissan state that Delphi designs, develops and manufacturers PODS products that these two companies purchase for their vehicles. (Garcia Decl., Delphi Ex. 17; Roberts Decl., Delphi Ex. 19.) Another declaration describes a similar arrangement between Delphi and Subaru. (Takai Decl., Delphi Ex. 20.) While ATI counters that certain Texas defendants aided in the design of some PODS products, it cannot be disputed that Delphi as manufacturer has primary and final control of any design and manufacturing process that might infringe upon ATI's patents.

The logic of the customer-suit exception applies well to this case. ATI as patent holder is the natural plaintiff, but the Texas litigation is piecemeal to the extent that those defendants relied upon Delphi as the source of an allegedly infringing product. Delphi as manufacturer is the natural defendant, because any resolution vis-a-vis Delphi would be global as far as its PODS customers and, for that matter, ATI would be concerned. Further, Delphi as manufacturer controlled the design and production and therefore is in the best position to defend its own products. As a matter of judicial economy, global settlement is preferred over piecemeal litigation. Moreover, the only apparent connection to the Eastern District of Texas is an unspecified general allegation

9

that "each Defendant has transacted business in this district or has committed and/or induced acts of patent infringement in this district." (TX Compl. at ¶ 10, ATI's Mot. at Ex. A.) It stands to reason that if such business and acts are limited to vehicle sales, then any federal district court in America would have the same connection to ATI's Texas case. As such, the court believes that special circumstances, including the possibility of forum-shopping, militate against following the first-to-file rule here, particularly when only about one month separates the filing of the two complaints. In addition, significant policy considerations favor global resolution of ATI's dispute with the actual source of the allegedly infringing products: Delphi. While concerns about the effect of Delphi's bankruptcy proceedings may have caused ATI not to sue Delphi in the first instance, Delphi's declaratory action properly raises post-petition claims. *See Chao*, 270 F.3d at 382-83. For these reasons, the court will deny ATI's motion to dismiss.

## B. ATI's Alternative Request to Transfer or Stay

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This provision is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "A district court 'has broad discretion to grant or deny a motion to transfer [a] case.'" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citing *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986)). The party seeking transfer of venue typically has the burden to establish that the new forum

is more convenient. *Viron Inter. Corp. v. David Boland Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002). Furthermore, "[m]erely shifting the burden [of inconvenience] from one party to another is impermissible." *Grand Kensington, LLC v. Burger King Corp,* 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000). Unless the balance is strongly in favor of the defendant, venue should not be disturbed. *Raymond E. Danto, Assocs., Inc. v. Arthur D. Little, Inc.,* 316 F. Supp. 1350, 1357 (W.D. Mich. 1970) (citing *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir. 1951)).

General considerations of judicial efficiency do not weigh heavily in favor of the Eastern District of Texas. As this court has already noted, that district has no particular connection to the parties or to the patents at issue.[4] ATI is organized under the laws of Delaware and its principal place of business is in North Carolina. (TX Compl. at ¶ 1, ATI's Mot. at Ex. A.) Delphi is also organized under Delaware law and its principal place of business is in Troy, Michigan. (MI Compl. at ¶ 1.) The court has no reason to believe that ATI's patents were developed in or otherwise originated from the Eastern District of Texas and the same is the case for Delphi's PODS products. The jurisdictional "hook" in Texas appears limited to automotive sales, which would approach national jurisdiction for the national commercial enterprises that do business in every, if not virtually every, federal district. Meanwhile, the locus of Delphi's activity is centered in the Eastern District of Michigan. Due to the parties' tenuous connection to

---

[4]The court's analysis of the customer-suit exception is not the end of the transfer inquiry, which depends on "other factors regarding convenience to the parties and the interests of justice . . . ." *BBC Int'l Ltd. v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438, 445-46 (E.D. N.Y. 2006).

Texas, this court cannot conclude that Texas is a more convenient location vis-a-vis the parties, witnesses, documents, other sources of proof and the operative facts.

Regarding the efficacy of either forum, both sides miss the mark. Delphi raises previous cases filed by ATI in this district before different judges and involving separate patents, but those factors say nothing about this court's familiarity with this particular case. Relatedly, ATI's reliance upon the patent case rules adopted by the Eastern District of Texas and its median time of filing to trial compared to that of this court also say nothing about how this court would manage this discreet case. The court trusts that either forum is equally equipped to properly manage and resolve the parties' dispute.

Both parties acknowledge having the means to litigate the cases separately and simultaneously, so this factor does not weigh in favor of transfer. While a global case is the more sensible approach, the court's analysis of the customer-suit exception advises against transferring this case to Texas. ATI as Plaintiff in Texas and Delphi as Plaintiff in Michigan have the right to select their forum. As a matter of comity and, indeed the limits of jurisdiction, this court cannot compel that the Texas case combine in Michigan with this case. (But it is worth noting that the motion to transfer filed in the Texas litigation was pending as late as July 21, 2008.) The *a priori* premise that two related cases are best tried together does not necessarily mean *a posteriori* that two such cases should be combined *anywhere*. Duplicative litigation, though regrettable, is in

some situations unavoidable. The court will not transfer or stay the case for the mere purpose of avoiding duplicative litigation.[5]

### IV. CONCLUSION

IT IS ORDERED that ATI's "Motion to Dismiss or in the Alternative to Transfer or Stay" [Dkt. # 5] is DENIED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: July 25, 2008


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 25, 2008, by electronic and/or ordinary mail.

        S/Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522

---

[5] This consideration may be moot, depending upon the outcome of the motion to transfer in Texas or, perhaps, the agreement of the parties.